# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: C.C. & T.C.**

**No. 15-0039** (Ohio County 14-CJA-10 & 14-CJA-28)

**FILED**

August 31, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Joint petitioners Father A.C. and Mother O.M., by counsel Edward Lee Gillison Jr., appeal the Circuit Court of Ohio County's November 18, 2014, order terminating their parental rights to C.C. and T.C. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine M. Bond, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners allege that the circuit court erred in (1) ratifying the emergency removal of the children at the preliminary hearings held in March and April of 2014; (2) adjudicating petitioners as abusing parents because the DHHR failed to prove abuse or neglect by clear and convincing evidence; (3) terminating petitioners' improvement periods; (4) terminating petitioners' parental rights to the children without post-termination visitation; and (5) denying petitioners' motions for less-restrictive dispositional alternatives, pursuant to West Virginia Code § 49-6-5(a)(5).[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2014, the DHHR filed its first abuse and neglect petition against petitioners alleging that Petitioner Mother, then pregnant with T.C., left her two-year-old daughter, C.C., alone for thirty minutes in a vehicle that was not running and had a window cracked on a day when the low temperature was twenty-nine degrees Fahrenheit. According to the petition, while that child waited in the vehicle, Petitioner Mother gambled in a video lottery machine establishment. The petition also alleged that Petitioner Mother failed to receive proper prenatal care while pregnant with T.C.; that she used illegal substances while pregnant with that child; that both petitioners failed to acknowledge the danger of leaving C.C. unattended in the vehicle

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

that day; and that both petitioners had substance abuse issues.[2] At the preliminary hearing held in later March of 2014, the circuit court heard evidence in support of the allegations in the petition. Based on that evidence, the circuit court found that the DHHR properly removed C.C. due to imminent danger.

Soon thereafter, T.C. was born. Following T.C.'s birth, the DHHR filed a second petition that contained the same allegations as the first petition but added the allegation that T.C. was in imminent danger. At a preliminary hearing on the second abuse and neglect petition, the circuit court found that the DHHR properly removed T.C. due to imminent danger while in petitioners' custody due to their substance abuse issues.

In May of 2014, the circuit court held an adjudicatory hearing on the second petition. A Child Protective Services ("CPS") worker testified that Petitioner Mother left C.C. in the vehicle as alleged in the petition; that pills were found in and around the vehicle at that time; and that she failed to receive any prenatal care while pregnant with T.C. since November of 2013. The DHHR also presented several witnesses, including a law enforcement officer, who testified that petitioner appeared intoxicated and staggering at the time she left her child unattended in the vehicle and that the temperature was below freezing that night. Further testimony established that petitioners both had a substantial substance abuse history with pills, marijuana, and heroin, and both had been in a Suboxone program in the months leading up to the petition's filing. Based on the evidence presented, the circuit court adjudicated petitioners as abusing parents due to their substance abuse and addictions that impaired their ability to parent and resulted in harm to the children.

In May and June of 2014, respectively, the circuit court granted petitioners post-adjudicatory improvement periods to address their substance abuse issues. The terms and conditions of each improvement period included participation in drug court, a substance abuse evaluation, and compliance with the recommendations of that evaluation.

In July of 2014, the guardian filed a motion to revoke petitioners' improvement periods based on their removal from the drug court program and other violations of the terms of those improvement periods. In August of 2014, the circuit court held a hearing on the guardian's motion. Drug court probation officers testified that petitioners failed to comply with the drug court program, citing attendance failures and an inability to be contacted by program coordinators. Additionally, a CPS worker testified that petitioners missed twenty-eight drug screens in June and July of 2014 and failed to obtain housing or employment. At that hearing, Petitioner Mother testified that she "should" test negative for illegal substances, and the circuit court took the matter under advisement and ordered that petitioners be immediately drug screened. Another hearing was set for late August of 2014. Petitioners were not present at the second hearing in August of 2014. By order entered in September of 2014, the circuit court terminated their improvement periods and set the matter for disposition.

---

[2]The DHHR later amended this abuse and neglect petition in April of 2014 to include additional allegations of drug use.

2

Petitioners failed to attend the dispositional hearing in October of 2014. The circuit court heard evidence that petitioners' services ended in August of 2014 for failure to attend and CPS had been in contact with Petitioner Mother only once since the prior hearing through a cellular telephone's text messaging service. Another CPS worker testified that petitioners failed to complete their services or to fully acknowledge their substance abuse issues. The CPS workers also testified that petitioners' drug screens from the hearing in August of 2014 were positive for several illicit substances. Based on this evidence, the circuit court terminated petitioners' parental rights to both children. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's first two assignments of error allege that the circuit court erred in ratifying the emergency removal of the children at the preliminary hearings held in March and April of 2014.[3] Pursuant to Rule 16(c) of the Rules of Procedure for Child Abuse and Neglect Proceedings, a circuit court may place a child into the custody of the DHHR or a responsible person, in accordance with the provisions of West Virginia Code § 49-6-3(b), at any time during the pendency of the child abuse and/or neglect proceedings if the circuit court determines that the child is in imminent danger. West Virginia Code § 49-1-3(8) provides that "'imminent danger to the physical well being of the child' means an emergency situation in which the welfare or the life of the child is threatened." Such a situation exists when "[t]he parent, guardian or custodian abuse of alcohol or drugs or other controlled substance . . . has impaired his or her parenting skills to a degree as to pose an imminent risk to a child's health or safety[.]" In this case, the CPS worker testified that both petitioners had a history of substance abuse, appeared intoxicated at the time of the vehicle incident or shortly thereafter, and failed to acknowledge the danger the vehicle incident posed. Based on that testimony, the circuit court had sufficient evidence to find that the children were in imminent danger because their welfare was threatened by the risk petitioners posed to their health and safety.

---

[3]Petitioner presents a separate assignment of error for the circuit court's removal of each child. As these assignments of error are clearly related, we address them together.

Next, petitioners assign error to the circuit court's adjudication of them as abusing parents.[4] A neglected child is one whose "physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education[.]" W.Va. Code § 49-1-3(11)(A)(i). We have also explained that the West Virginia Code requires the DHHR, "in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syl. Pt. 3, *In re F.S.*, 233 W.Va. 538, 759 S.E.2d 769 (2014) (citations omitted). While petitioners claim the DHHR failed to prove abuse or neglect by clear and convincing evidence, the record clearly demonstrates that Petitioner Mother left her child unsupervised in March of 2014 and that both petitioners suffered from a substance abuse problem affecting their ability to parent, as evidenced by their appearance of intoxication at the time of the petition's filing in March of 2014; by the pills found in or around the vehicle; by petitioners' prior use of drugs such as pills; and by their use of Suboxone/Subutex as a treatment for that problem in 2013 and 2014. Evidence also established that Petitioner Mother tested positive for oxycodone, oxymorphone, and Xanax while pregnant with T.C. Notably, petitioners chose not to testify at the adjudicatory hearing in this matter. We have previously held that:

> [b]ecause the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W.Va. Dep't of Health and Human Res. ex rel. Wright v. Doris* S., 197 W.Va. 489, 475 S.E.2d 865 (1996). Given the great weight of evidence before the circuit court, including the affirmative evidence of petitioners' culpability due to their silence, the circuit court did not err in adjudicating petitioners as abusing parents.

Petitioners' fourth assignment of error is that the circuit court erred in terminating their improvement periods. With regard to termination of an improvement period, we have held that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements; it is also within the court's discretion to terminate the improvement period . . . if the court is not satisfied that the [subject parent] is making the necessary progress." Syl. Pt. 2, in part, *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993); *see also* West Virginia Code § 49-6-12 (providing circuit courts discretion regarding improvement periods). As petitioners' assignment of error hinges on the circuit court's discretion to weigh evidence, we also note that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*,

---

[4]West Virginia Code § 49-1-3(2) defined "abusing parent" as "a parent, guardian or other custodian . . . whose conduct, as alleged in the petition charging child abuse or neglect, has been adjudged by the court to constitute child abuse *or neglect*." (Emphasis added).

4

208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). In this case, while petitioners argue that they had "credible reasons" for each violation of their improvement periods, the record on appeal reveals that the circuit court considered those "reasons" before ruling that petitioners failed to make the necessary progress to warrant continuation of those improvement periods. The evidence established that petitioners were removed from the drug court for failing to attend that program and failing to maintain contact with the program's coordinators; had missed more than two-dozen drug screens; and had failed to acquire housing or employment. In their defense, petitioners claimed that they did not receive notice from drug court due to "moving back and forth between Weirton and Washington, PA"; that they could not complete drug screens because they lost their proper identification cards; and that they generally had transportation and telephone problems. Despite these "reasons," we find that the circuit court properly weighed the evidence before it and rendered findings consistent with the evidence.

Petitioners further claim that the circuit court was not legally permitted to terminate their improvement periods because it stated that it would not do so if petitioners entered a substance abuse treatment program. However, as noted above, the circuit court has discretion to terminate an improvement period if it is satisfied that a subject parent is not making the necessary progress. The evidence demonstrates that petitioners were not making any significant progress in their improvement periods, and it is clear from the record on appeal that they did not enter a substance abuse treatment program. Petitioner O.M. claims to have completed a ten-day detoxification program, but no evidence of that allegedly completed program appears in the record on appeal, nor is a short-term detoxification program tantamount to the substance abuse treatment contemplated in the proceedings below. Given the circumstances of this case, we find no abuse of discretion in the circuit court's termination of petitioners' improvement periods.

Petitioners' fifth assignment of error is that the circuit court erred in terminating their parental rights, without ordering post-termination visitation. As to post-termination visitation, petitioners point to no place in the record on appeal where they made a motion for the same. This Court has often held that a party must assert an issue in the circuit court to preserve it for appellate review. *See State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) (stating that "'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue"); *State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered for the first time on appeal") (citation omitted); *see also* W. Va. R. App. P. 10(c)(7) (requiring petitioner's briefs to contain an argument exhibiting clearly the points of fact and law presented with "appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Because the issue of post-termination visitation was not raised before the circuit court, we do not address on appeal the circuit court's failure to grant the same.

As to the circuit court's termination of petitioners' parental rights to the children, we find no error. West Virginia Code § 49-6-5(b)(3) explains that circumstances in which a parent fails to respond to rehabilitative efforts or a reasonable family case plan are considered circumstances in which there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected. In this case, the circuit court heard evidence that, during the pendency of these proceedings, petitioners were removed from a drug court program for noncompliance; missed over two dozen drug screens; failed drug screens; failed to obtain housing or employment; failed to maintain contact with CPS; failed to complete services and to fully acknowledge their substance abuse issues; and failed to appear for the last two hearings below. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioners could substantially correct the conditions of abuse and neglect in the near future and the children's welfare required termination. It is clear that the circuit court properly found that petitioners failed to respond to rehabilitative efforts and that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. Therefore, under the circumstances of this case, we find no error in the circuit court's order terminating petitioners' parental rights.

Petitioners' sixth and final assignment of error is that the circuit court failed to impose less-restrictive dispositional alternatives, particularly a disposition pursuant to West Virginia Code § 49-6-5(a)(5). As explained above, the evidence in this matter supported the findings that there was no reasonable likelihood that petitioners could substantially correct the conditions of abuse and neglect in the near future and the children's welfare required termination. West Virginia Code § 49-6-5(a)(6) directs circuit courts to terminate parental rights upon such findings. Moreover, we have held that

> [a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under W.Va. Code [§] 49–6–5 (1977) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Therefore, because the circuit court properly found that termination was required in this matter, we find no error in the circuit court's order terminating petitioners' parental rights without imposing less-restrictive dispositional alternatives.

Therefore, we find no error in the circuit court's November 18, 2014, order, and we hereby affirm the same.

Affirmed.

6

**ISSUED**:  August 31, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II