689 S.E.2d 21

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Walter JESSIE, Defendants Below, Appellant.**

**No. 34589.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2009.

Decided Nov. 24, 2009.

Robert B. Kuenzel, Avis, Whitten & Wandling, Logan, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Attorney General's Office, Charleston, WV, for Appellee.

McHUGH, Justice:

This is an appeal by Walter Jessie (hereinafter "Appellant") from a conviction for unlawful assault in the Circuit Court of Mingo County. The Appellant claims that he was denied his constitutional right to a speedy trial and that his due process rights were violated by a two and one-half year delay between the arrest and the indictment. He further contends that he did not waive his right to a speedy trial, that his counsel was ineffective, and that he was denied due pro-

cess of law by the State's failure to inform him of its intent to introduce evidence of flight. Subsequent to thorough review of the record, arguments of counsel, briefs, and applicable precedent, this Court affirms the determination of the lower court.

## I. Factual and Procedural History

While driving their vehicle on August 1, 2004, the Appellant and his wife noticed Mr. Randy Francis and a female companion, Tony Reynolds,[1] driving in another vehicle. Mr. Francis had allegedly had an affair with the Appellant's wife while the Appellant and his wife had been separated. The Appellant allegedly flagged down the vehicle in which Mr. Francis and Ms. Reynolds were traveling. The Appellant and Mr. Francis exited the vehicles, and the Appellant allegedly proceeded to beat Mr. Francis with a tire iron or bumper jack. Mr. Francis suffered a broken collar bone and skull damage.[2]

The Appellant was arrested on August 26, 2004, twenty-five days after the incident in question. The incident was initially investigated by Officer Jason Smith and was subsequently investigated by Officer Joe Smith after Officer Jason Smith left the police department. On January 27, 2007, the Appellant was indicted for unlawful assault, in violation of West Virginia Code § 61–2–9 (2004) (Repl.Vol. 2005). Claiming that the two and one-half year delay between the arrest and the indictment was prejudicial and violative of his constitutional rights, the Appellant filed a Motion to Dismiss the indictment. On March 12, 2007, the lower court held a hearing on the Appellant's Motion to Dismiss, and the motion was ultimately denied. On May 9, 2007, a jury convicted the Appellant of unlawful assault, and he was sentenced to one to five years in the state penitentiary. The issue of the right to a speedy trial was not raised in post-trial motions.

The Appellant now appeals to this Court, contending that his Fifth and Sixth Amendment rights were violated by the two and one-half year delay between the arrest and the indictment; that he did not waive his right to a speedy trial by failure to specifically move for a speedy trial; that he was denied effective assistance of counsel; and that he was denied due process of law by the State's failure to inform him of its intent to elicit evidence of flight.

## II. Standard of Review

In syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court enunciated the following standard of review, applicable to this case: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point two of *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997), also explained as follows.

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

With regard to the Appellant's assertion of ineffective assistance of counsel, we explained in *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995), that "[a]n ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*." 195 W.Va. at 320, 465 S.E.2d at 422. With these standards as guidance, we proceed to address the merits of the Appellant's claims.

## III. Discussion

### A. Failure to Assert the Right to Speedy Trial in Post–Trial Motions

The State contends that this Court should refuse to consider the Appellant's ar-

---

1. Ms. Reynolds is also known as Antoinette Hatfield.

2. Evidence at trial indicated that Mr. Francis' injuries caused him to suffer blackouts, memory loss, and seizures. Mr. Francis' sister, Clarissa Tackett, testified that he required physical restraint to prevent him from biting his hands and placing objects in his mouth.

guments regarding alleged constitutional violations based upon the delay between the arrest and the indictment because the Appellant failed to bring these issues to the trial court's attention on post-trial motions. Indeed, this Court explained in syllabus point two of *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998), that "[a]s a general matter, a defendant may not assign as error, for the first time on direct appeal, an issue that could have been presented initially for review by the trial court on a post-trial motion." *See also State v. Noll*, 223 W.Va. 6, 672 S.E.2d 142 (2008).

However, this Court's review of the record indicates that although the Appellant failed to re-assert these issues in a post-trial motion, he did raise them in a pre-trial motion to dismiss, unlike the factual situations existing in *Salmons* and *Noll*. Thus, the trial court was presented with an opportunity to rule on the issues currently raised on appeal. Other jurisdictions have addressed the ramifications of such a situation. In *People v. Patterson*, 392 Ill.App.3d 461, 332 Ill.Dec. 58, 912 N.E.2d 244 (2009), for instance, the appellate court determined that it would consider the defendant's speedy trial claim on appeal, despite the defendant's failure to raise that issue in a post-trial motion since the issue was fully considered by the trial court, both at a hearing on the initial motion to dismiss and at a hearing on a motion to reconsider before trial began.

Similarly, in *People v. Exson*, 384 Ill. App.3d 794, 324 Ill.Dec. 768, 896 N.E.2d 844 (2008), the appellate court decided to consider the merits of a defendant's statutory speedy trial claim despite his failure to raise the issue in his post-trial motion. The trial court had specifically commented upon the speedy trial issue when it granted the state's motion for a continuance beyond the 120–day statutory speedy-trial period. The appellate court therefore found that raising the issue in a written post-trial motion would not have changed the outcome in trial court.

 This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal. *Whitlow v. Bd. of*

*Educ. of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).

The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

*Id.* at 226, 438 S.E.2d at 18. Thus, our guiding precept in this regard is that the trial court must be provided with an opportunity to rule on issues properly before it and that it would be improper for this Court to rule on an issue on which the trial court had not first passed judgment. However, where the specific issue is of such a nature that it was raised and fully considered in a pre-trial motion, that requirement has been satisfied, and this Court is free to consider the issue on appeal. Thus, although this Court has held that a defendant may not assign an error for the first time on appeal that could have been presented initially for review in a post-trial motion, failure to raise an issue in a post-trial motion will not prevent this Court from entertaining that issue on appeal where it is clear that the trial court carefully and completely considered that specific issue in a pre-trial motion.

Based upon the Appellant's assertion of these claims in a pre-trial hearing and the fact that the trial court fully evaluated these claims at that juncture, this Court will review the Appellant's assertions of these assignments of error.

B. Alleged Violations of Sixth Amendment

 The Appellant asserts that the two and one-half year delay between his arrest and his indictment constitutes a violation of his Sixth Amendment right to a speedy trial. It has been consistently held that the Sixth Amendment attaches at arrest or indictment, whichever occurs first. As the United States Supreme Court stated in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30

L.Ed.2d 468 (1971), constitutional guarantees to a speedy trial are not invoked until a citizen becomes an accused, either by arrest or indictment. 404 U.S. at 313, 92 S.Ct. 455. Likewise, with regard to violations of the Sixth Amendment by delays in prosecution, this Court, mirroring language utilized by the United States Supreme Court, has explained that "[t]he Sixth Amendment speedy trial right begins with the actual arrest of the defendant and will also be initiated where there has been no arrest, but formal charges have been brought by way of an indictment or information." Syl. Pt. 1, *State v. Drachman,* 178 W.Va. 207, 358 S.E.2d 603 (1987); *see also Hundley v. Ashworth,* 181 W.Va. 379, 381, 382 S.E.2d 573, 575 (1989), *overruled on other grounds by State ex rel. Knotts v. Facemire,* 223 W.Va. 594, 678 S.E.2d 847 (2009). In *State v. Palmer,* 726 S.W.2d 447 (Mo.App. S.D.1987), the Missouri court explained: " '[T]he time for purposes of speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or an arrest, whichever occurs first.' " 726 S.W.2d at 448, quoting *State v. Holmes,* 643 S.W.2d 282, 285[3] (Mo.App. 1982); *see also United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 71 L.Ed.2d 696, (1982) (citing *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975)) ("[T]he period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim.").

■ Thus, in the present case, the Sixth Amendment clearly attached when the Appellant was arrested, twenty-five days after the incident in question. The delay was post-accusatory, and the Sixth Amendment is therefore applicable. The methodology for assessing claims of Sixth Amendment violations was enunciated by this Court in *State v. Foddrell,* 171 W.Va. 54, 297 S.E.2d 829 (1982). Syllabus point two of *Foddrell* provides the following guidance:

A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial.

In *Foddrell,* this Court held that a delay of almost six years between indictment and trial was not caused by neglect on the part of the investigating officers. The defendant had not attempted to assert his right to a speedy trial, and he had failed to demonstrate that he was prejudiced by the delay. As this Court opined, "[t]here was no showing that the deceased witness would have testified or what exactly her testimony would have been had she testified. Even if we assume that her testimony would have supported the appellant's assertions at trial, there was no showing that such testimony was critical to the appellant's defense at trial." 171 W.Va. at 58, 297 S.E.2d at 833.

■ This Court again addressed this issue in *Drachman* and recognized a distinction between Fifth and Sixth Amendment claims in syllabus point two, as follows:

In those situations where there has been no arrest or indictment, the Sixth Amendment right to a speedy trial is not implicated. Yet, the prosecution may have substantially delayed the institution of criminal proceedings causing prejudice to the defendant by way of loss of witnesses or other evidence. In this situation, the Fifth Amendment due process standard is utilized.

In *Drachman,* this Court analyzed the appellant's allegations of delay, the reasons for the delay, the appellant's assertion of his rights, and the prejudice to the appellant. This Court found that the appellant had not presented sufficient evidence of prejudice and had not asserted his rights in a timely fashion. Thus, he was not entitled to relief. Similarly, in *State v. Hinchman,* 214 W.Va. 624, 591 S.E.2d 182 (2003), this Court found that the appellant had not been prejudiced by the almost four-year delay between the alleged crime and the indictment.

We proceed to an evaluation of the pertinent facts of the present case, utilizing the four factors identified in *Foddrell.*

1. Length of the Delay; and

2. Reasons for Delay

 Because the length of the delay is easily ascertainable and undisputed, this Court will discuss the length of the delay and the reasons for such delay together. Two and one-half years elapsed between the arrest and the indictment. In explanation for this delay, the State asserts that the original officer, Jason Smith, left the police department, and another officer, Joe Smith, assumed responsibility for the investigation. The State also explains that there was either no file on the matter or it had been misplaced. Deputy Sheriff Joe Smith was therefore required to re-investigate the case. There was no evidence of intentional delay by the investigating officers or the police department. In the order denying the Appellant's pre-trial motion to dismiss based upon the delay, the trial court held as follows: "Although the length of the delay was considerable the Court FINDS that the delay was justified due to the fact that Deputy Joe Smith had to start a new investigation when Deputy Jason Smith left the Sheriff's Department."

3. Appellant's Assertion of Rights

 With regard to the Appellant's assertion of his rights to a speedy trial, the Appellant maintains, as a separate assignment of error, that he did not waive his right to a speedy trial as a result of his counsel's failure to move for speedy trial prior to the indictment. Because this issue is properly considered as the third factor of the *Foddrell* paradigm for evaluation the Sixth Amendment claims, it is more properly addressed as a portion of this Sixth Amendment discussion.

A defendant's assertion of his right was considered as one of the factors in *Drachman,* wherein the defendant did not assert his right to speedy trial for fifteen months. Although he was involved in the legal process with sufficient regularity and adroitness to obtain four continuances of his trial date between his 1983 arrest and his 1985 trial, he did not raise the speedy trial issue during that time. This Court in *Drachman* found that there was not a timely assertion of the right.

As noted in *United States v. Macino,* 486 F.2d 750 (7th Cir.1973), however, the weight to be given to "the absence of a demand in cases where the delay is between arrest and indictment is substantially less than in cases of post-indictment delay." 486 F.2d at 753. "Importantly, we cannot ignore the fact that a person who is arrested but not charged will always nourish the hope that the government will decide not to prosecute." *State v. Foat,* 442 So.2d 1146, 1154 (La.App.1983). As the *Macino* Court noted, "we are not, therefore, inclined to force a prospective criminal defendant to seek his own prosecution." 486 F.2d at 753.

The United States Supreme Court has also addressed the concept that a defendant who fails to demand a speedy trial waives that right. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court explained as follows:

We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.

407 U.S. at 528–29, 92 S.Ct. 2182.

In the present case, we do not find that the Appellant completely waived his right to as-

sert a speedy trial violation by failing to formally request a speedy trial during the period which elapsed between his arrest and his indictment. Rather, as specified by this Court in *Drachman*, the issue of failure to request a speedy trial should be considered as *one of the factors* in determining whether a Sixth Amendment violation has occurred.

### 4. Showing of Prejudice

With regard to the final prong of the *Foddrell* factors, the Appellant's evidence of prejudice is extremely limited. The Appellant's primary assertion in this regard is that the delay prevented him from calling four witnesses on his behalf. Those witnesses, although they were not eyewitnesses to the incident in question, would allegedly have testified that the victim had been the aggressor in past encounters between the two men. Two of the potential witnesses, Paulette Patrick and Michael Hinkle, had died prior to trial. Two others, Kenneth Allen and Shannon Allen, had moved out of state. However, at least one of the out-of-state witnesses, Kenneth Allen, was eventually located and testified at trial on the Appellant's behalf. Moreover, the Appellant asserted the theory of self-defense at trial, and none of these four individuals was an eyewitness to the crime. They would only have been presented for the purpose of testifying regarding alleged provocations that occurred two months prior to the incident in question.

When the Appellant presented this matter to the trial court in the form of a pre-trial motion to dismiss, the trial court found no prejudice. The trial court explained that the Appellant had "additional witnesses who are available to testify on his behalf." The trial court further found that the "affidavit that the Defendant submitted to the Court is self-serving." The trial court found no corroborative evidence that "verifies what Paulette Patrick and Michael Hinkle would have said or that it would be relevant."

Having evaluated the length of the delay, the reasons for the delay, the Appellant's assertion of his rights, and the prejudice to the Appellant, this Court finds that the Appellant's Sixth Amendment rights to a speedy trial were not violated in this case.

### C. Alleged Violations of Fifth Amendment

The Appellant also asserts that his Fifth Amendment due process rights were violated by the delay in this case. As discussed above, the determination of whether a particular delay is to be analyzed as a potential Sixth Amendment speedy trial violation or a Fifth Amendment due process violation is critical in attempting to apply the standards of evaluation. As this Court observed in *Drachman* and discussed above, the Fifth Amendment due process standard is applicable to pre-accusatory delay. *See also State v. Smith*, 809 So.2d 556, 559 (La.App. 1 Cir. 2002) ("[f]or preaccusation delay, due process [Fifth Amendment] is the standard.").

A discussion of the interplay between Fifth Amendment and Sixth Amendment analyses must also include a recognition of a factual peculiarity in this case. The two and one-half year delay existent in the present case is post-arrest, but pre-indictment. That obviously creates a slight oddity within the conventional nomenclature for addressing these types of cases. In order to identify the time period being referenced with more precision, many jurisdictions have employed very descriptive terminology, stating that the Sixth Amendment attaches at the "post-accusatory" stage, and the Fifth Amendment applies at the "pre-accusatory" stage, thus encompassing the pre-arrest or indictment time period.

An illuminating discussion of this distinction was presented in *People v. Guzman*, 163 Misc.2d 237, 620 N.Y.S.2d 227 (1994). The *Guzman* court noted the methodology identified by the United States Supreme Court in distinguishing between pre-accusatorial delay and post-accusatorial delay and explained the foundation for the Sixth Amendment/Fifth Amendment distinctions as follows:

> For federal constitutional purposes, the delay occurring *before* either arrest or indictment ... is analyzed differently from delay in bringing the accused to trial *after* arrest or indictment. Post-accusation delay is measured against the Sixth Amendment right to a speedy trial; *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; *see, People v. Taranovich*, 37 N.Y.2d 442, 444–445, 373 N.Y.S.2d 79, 335

N.E.2d 303 [ (1975) ], *People v. Singer,* 44 N.Y.2d 241, ·252, 405 N.Y.S.2d 17, 376 N.E.2d 179. Delay occurring *before* either arrest or indictment is scrutinized under the lens of due process. *U.S. v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; *U.S. v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 [ (1977) ]; *People v. Singer,* 44 N.Y.2d at 252, 405 N.Y.S.2d 17, 376 N.E.2d 179.

(Footnote omitted)

620 N.Y.S.2d at 230. The *Guzman* court also very concisely described the similarities and differences in elements of consideration for Fifth Amendment and Sixth Amendment claims.

> Some of the same considerations in evaluating post-accusation delay apply to pre-accusation delay, for example, whether the government has shown good cause for its inaction. *See, U.S. v. Lovasco, supra.* The principal distinction, however, is that in order to prevail on a federal due process claim of pre-accusation delay, the accused must demonstrate that he has suffered actual prejudice as a consequence of the government's inaction. *U.S. v. Marion, supra; U.S. v. Lovasco,* supra. This is because delay occurring before the government initiates a prosecution involves neither the public obloquy attendant upon official accusation or pre-trial detention-the chief concerns of delay occurring after accusation. Accordingly, the failure to bring timely charges rises to a federal due process violation, only upon a showing that the passage of time actually impaired the defendant's ability to mount a defense. *U.S. v. Marion, supra; U.S. v. Lovasco, supra; People v. Singer,* 44 N.Y.2d 241, 252, 405 N.Y.S.2d 17, 376 N.E.2d 179.

*Id.* at 230.

Another excellent discussion was included in *People v. Singer,* 44 N.Y.2d 241, 405 N.Y.S.2d 17, 376 N.E.2d 179 (1978). In that case, the crime had occurred in 1970, but the defendant had not been arrested and charged until 1974. The *Singer* court reasoned as follows:

> Characterization of the delay as "preindictment" or "postindictment" is often determinative. Delay in bringing the defendant to trial after indictment or arrest is measured against the Sixth Amendment speedy trial requirement which takes into account a number of factors, including actual or potential prejudice to the defendant's case through the loss of witnesses and the dulling of memory. Preindictment delay, on the other hand, is governed by the due process clause which generally requires a showing of actual prejudice before dismissal would be warranted.

405 N.Y.S.2d 17, 376 N.E.2d at 185 (citations omitted). The *Singer* court further explained that such "distinction is based essentially on the theory that the speedy trial guarantee was designed primarily 'to prevent undue and oppressive incarceration prior to trial, [and] to minimize anxiety and concern accompanying public accusation.' " *Id.* (quoting *Marion,* 404 U.S. at 320, 92 S.Ct. 455). Furthermore, the *Singer* court explained that "[t]he distinction assumes that these considerations do not become relevant until the defendant has been arrested or formally accused." *Id.*

██ In an effort to clarify the precise triggering event critical to an analysis of Fifth and Sixth Amendment rights of an accused with regard to allegedly prejudicial delays in prosecution, the events occurring within the defendant's chronology should be characterized as pre-accusatory or post-accusatory. Pre-accusatory delays, encompassing the time period before the moment of accusation whether by arrest or indictment, are evaluated under the Due Process provision of the Fifth Amendment. Post-accusatory delays, encompassing the time period after the moment of accusation whether by arrest or indictment, are evaluated under the speedy trial provision of the Sixth Amendment.

██ Thus, the Fifth Amendment is not the proper standard governing review of the post-accusatory delay occurring in the present case. The Fifth Amendment is violated, under certain circumstances, where the delay in question is *pre-accusatory,* i.e., before the Sixth Amendment becomes applicable. The pre-accusatory delay in this case was only twenty-five days. Moreover, even

if the Appellant could reasonably assert a claim of a Fifth Amendment violation, he would be entitled to relief *only* if he demonstrated that he had suffered *actual* prejudice as a result of the delay. This standard was enunciated by this Court in *State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 678 S.E.2d 847 (2009). In *Knotts*, this Court explained that a defendant must demonstrate *actual* prejudice in order to prevail in a Fifth Amendment delay argument, specifically stating as follows in syllabus point two:

> To maintain a claim that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice. To the extent our prior decisions in *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W.Va.1980), *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989), and their progeny are inconsistent with this holding, they are expressly overruled.

The *Knotts* Court specified that the burden is on the defendant to demonstrate the actual prejudice. Syllabus point three of *Knotts* explained:

> In determining whether preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the initial burden is on the defendant to show that actual prejudice has resulted from the delay. Once that showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay. In balancing these competing interests, the core inquiry is whether the government's decision to prosecute after substantial delay violates fundamental notions of justice or the community's sense of fair play. To the extent our prior decision in *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989), and its progeny are inconsistent with this ruling, they are expressly overruled.

Syllabus point four of *Knotts* continued:

> To demonstrate that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, a defendant must introduce substantial evidence of actual prejudice which proves he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected.

The Appellant has not demonstrated anything near actual prejudice in this case. As discussed fully above, the evidence of prejudice is severely lacking. Moreover, the Appellant has not shown he was "meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was or will be likely affected[,]" as required by syllabus point four of *Knotts*. We consequently find no Fifth Amendment violation.

D. Ineffective Assistance of Counsel

■ The Appellant also contends that his counsel was ineffective in failing to request a speedy trial between the arrest and the indictment.[3] In *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we stated that in order to prevail on an ineffective assistance of counsel claim, the petitioner must show both deficient performance and prejudice. Specifically, syllabus point five of *Miller* explained:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

■ Moreover, as the State maintains, allegations of ineffective assistance of counsel are preferably brought to the court's attention in a habeas corpus action. Syllabus point ten of *State v. Triplett*, 187 W.Va. 760,

---

**3.** Nothing was done in the Appellant's case after his arrest. When the Appellant was finally indicted two and one-half years later, counsel moved to be relieved, indicating that she had a conflict in representation.

421 S.E.2d 511 (1992), explains that concept as follows:

It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

*See also State v. Hutchinson,* 215 W.Va. 313, 323, 599 S.E.2d 736, 746 (2004).

This particular claim of ineffective assistance of counsel is also affected by the determination this Court made above with regard to the fact that the Appellant did not outright waive his right to assert a Sixth Amendment violation by failing to request a speedy trial between his arrest and his indictment. Thus, counsel's failure to so act has not affected the Appellant's case in any significant manner. This Court still considered the Appellant's claims of Fifth and Sixth Amendment violations and rejected those claims on grounds completely independent of any action or inaction on the part of the Appellant's counsel. The Appellant cannot demonstrate prejudice in this case because, as we held above, the Appellant did not waive his right to a speedy trial by failing to formally request a speedy trial during the period which elapsed between his arrest and his indictment. Thus, we find that the Appellant's contention that his counsel was ineffective for failing to raise that issue is meritless.

E. State's Failure to Inform Appellant of Intent to Use Evidence of Flight

The Appellant also alleges that he was denied due process by the State's failure to inform him of its intent to elicit flight evidence. The Appellant had requested flight evidence in the Omnibus Discovery Motion, and the State had not provided the Appellant with any notice of flight evidence. In syllabus point seven of *Acord v. Hedrick,* 176 W.Va. 154, 342 S.E.2d 120 (1986), this Court explained:

"In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an in camera hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect." Syl. Pt. 6, *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981).

In the present case, there were two instances of alleged flight evidence presented during trial. An in camera hearing was not held on this issue. During the direct testimony of Officer Joe Smith, the State elicited the following testimony:

Q. I'm assuming later on someone arrested Walter Jessie. Is that correct?

A. That's correct.

Q. Why did you arrest Walter Jessie?

A. Uh—We got a warrant for him and I believe they actually picked him up maybe in Ohio. I'm not sure, but I'm going to say that, or maybe back here. It was later, though. I don't have the date of arrest, but the incident occurred on the 1st of August, 2004, and we've got information he went to Ohio right after it happened and we were unable to get him picked up because we couldn't find out where he was and he was arrested sometime after that back here.

Counsel for the Appellant did not object to that testimony. Moreover, as the State contends, the evidence was introduced in an attempt to explain the investigation and the delays, rather than in an attempt to establish any intent by the Appellant to escape or evade capture.

In the second instance of alleged flight evidence, the following exchange occurred during the testimony of Melanie Jessie:

Q. Eventually, were you with Walter when he was located, arrested?

A. Uh—I was with him but not with him. He was—excuse me—he was Ginsenging when they picked him up. He was coming

out of the mountains at the head of Pigeon Creek.

Q. How many days after this?

A. It was about a month or two. I'm not sure.

Q. Did you wonder why it took a month?

A. Why did it take a month?

Q. I asked the question. Did you ever think about it?

A. No.

Q. Did Walter ever go to Ohio during this time?

Counsel for the Appellant then objected, and the objection was sustained. In a bench conference immediately thereafter, the trial court informed the State as follows: "If you had evidence of flight we could have had an in camera hearing and we could have proceeded with it." No other evidence even remotely referencing flight was introduced.

■ With regard to the first instance of reference to the State of Ohio, in the absence of an objection, the Appellant would have to establish plain error in order to obtain the appellate relief he seeks. As this Court explained in syllabus point seven of *Miller*, in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." 194 W.Va. at 5, 459 S.E.2d at 116. This Court has also observed that "[i]n criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting the error. *See United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, 827 (1982)." *State v. Marple*, 197 W.Va. 47, 52, 475 S.E.2d 47, 52 (1996).

The record reflects that the Appellant's presence in the State of Ohio was referenced fleetingly and without accompanying evidence attempting to indicate or insinuate intent to flee this jurisdiction. We decline to apply the plain error doctrine based upon the absence of any indication that this reference affected the Appellant's substantial rights or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. The Appellant's objection to the second reference to the State of Ohio was sustained, and no additional evidence was elicited regarding the Appellant's presence in another state. We find no error in the trial court's ruling in this regard, and we find no violation of the Appellant's due process rights.

IV. Conclusion

Based upon the foregoing, this Court affirms the Circuit Court of Mingo County.

Affirmed.