# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **M.G., C.G., and E.G.**

**No. 16-0443** (Taylor County 14-JA-13, 14-JA-14, & 14-JA-15)

**FILED**

**September 19, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.G., by counsel Jason T. Gain, appeals the Circuit Court of Taylor County's April 6, 2016, order terminating her parental rights to M.G., C.G., and E.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges the following: (1) that the circuit court erred in implementing an inappropriate improvement period; (2) that the evidence upon which the circuit court based termination of her parental rights was insufficient; (3) that the circuit court erred in failing to consider less-restrictive dispositional alternatives; and (4) that her due process rights were violated due to having to defend against allegations not contained in the petition.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2014, the DHHR filed an abuse and neglect petition regarding petitioner's three children, M.G., then twelve years old; C.G., then eight years old; and E.G., then six years old. According to the DHHR, at the time of the petition's filing, M.G. primarily resided with her maternal grandmother by petitioner's agreement. According to the DHHR, all three children were severely truant as a result of petitioner's neglect. The DHHR additionally indicated that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

petitioner was charged criminally as a result of the children's neglect. The DHHR further alleged in its petition that petitioner exaggerated and/or falsified the children's medical conditions to their detriment. This allegation was supported with numerous references to medical records that indicated petitioner had reported that the children had unfounded medical conditions. These records included entries from medical professionals indicating that petitioner was "trying to gather attention" and expressing concern that petitioner's statements regarding the children's health were inconsistent. It was later determined that the children were being treated by as many as twenty-one different physicians.

Later that same month, the circuit court held a preliminary hearing, during which it noted that the children's truancy issues and medical concerns persisted despite the prior intervention of the board of education and the criminal court. According to the circuit court, petitioner continued to pursue unnecessary medical care for the children, who continued to miss school. At the conclusion of the hearing, the circuit court placed the children in the DHHR's legal custody and authorized the DHHR to remove the children from petitioner's care. At the time, however, the DHHR chose to allow the children to remain in petitioner's physical custody.

In June of 2014, the circuit court held a status hearing, during which it determined that the children's truancy continued, as did concerns about petitioner imposing unnecessary medical treatment on the children. Based on these issues, both the DHHR and the guardian moved the circuit court to remove the children from petitioner's care. At the time, the only alternate relative placement was in the home of the maternal grandmother who was alleged to be supportive of petitioner's excessive medical tests and treatments for the children and unsupportive of intervention services. As such, the children were placed in foster care. After the children were removed from petitioner, medical testing confirmed that both M.G. and E.G. suffer from myotonic dystrophy. However, tests did not confirm that either child exhibited symptoms of the condition. Moreover, after medical evaluation, most of C.G.'s medications were found to be unnecessary and were reduced or discontinued altogether. Thus, according to the DHHR, none of the medical issues petitioner asserted the children had were confirmed by medical testing, apart from the genetic condition itself. Further, petitioner admitted that the course of treatment the children received was improper and excessive, even given this diagnosis.

The circuit court held an adjudicatory hearing in August of 2014, during which petitioner stipulated to exaggerating and misrepresenting the children's medical issues which resulted in them missing an inexcusable number of school days. However, after it was suggested that she may suffer from Munchausen by proxy syndrome, petitioner denied the same.[3] The circuit court further granted petitioner a post-adjudicatory improvement period. As such, the multidisciplinary team ("MDT") met, designed, and agreed upon a family case plan with a goal of reunification

---

[3]Munchausen by proxy is a condition in which "a person acts as if an individual he or she is caring for has a physical or mental illness when the person is not really sick. The adult perpetrator has the diagnosis . . . and directly produces or lies about illness in another person under his or her care, usually a child under 6 years of age." *Diseases & Conditions: Munchausen Syndrome by proxy*, http://my.clevelandclinic.org/health/diseases_conditions/hic_An_Overview _of_Factitious_Disorders/hic_Munchausen_Syndrome/hic_Munchausen_Syndrome_by_Proxy (last visited Sept. 15, 2016).

with petitioner. According to the plan, the medical issues and the children's truancy were identified as the deficiencies that needed to be corrected. Moreover, the plan set forth the changes petitioner needed to make in order to correct these issues, and set forth a plan for specific services to assist in this goal. The MDT additionally requested that petitioner undergo a psychiatric evaluation to determine if she suffered from Munchausen by proxy, but petitioner's counsel was not cooperative with this request and made clear that he did not want his client to participate in such an evaluation. As such, the DHHR did not schedule the same. However, issues related to the evaluation persisted throughout the proceedings. The circuit court and guardian repeatedly voiced concerns that petitioner suffered from this condition, and the children's therapist and petitioner's skills provider both recommended that petitioner undergo an evaluation to determine if she suffered from the condition. Despite these concerns, petitioner never completed the psychiatric evaluation.[4]

Following the adjudicatory hearing, the circuit court held five status hearings in the case; however, petitioner and/or her counsel appeared for only two. At a status hearing in September of 2014 that neither petitioner nor her counsel attended despite prior notice, the children's maternal aunt and uncle appeared and requested placement of the children. The circuit court ordered a home study on their residence. As to petitioner's improvement period, the record shows that she initially complied with services. However, petitioner's level of effort declined over time, which ultimately resulted in service providers, the DHHR, and the guardian expressing concern that petitioner was unable to make the changes necessary to safely reunify with her children. According to several service providers, petitioner failed to implement the things she learned in her services; therefore, both individuals who provided parenting instruction to petitioner discontinued services based upon his lack of progress. Moreover, after the first few months of her improvement period, petitioner began spending extended periods in the Commonwealth of Pennsylvania with a new significant other, which resulted in her missing several visits with the children. According to one provider, during this time, petitioner became more involved in her own personal life and less eager to complete the terms of her improvement period. Ultimately, petitioner's noncompliance with the terms of her improvement period resulted in the guardian filing a motion to revoke the same in January of 2015.

Around that time, petitioner was given a new parenting provider who worked with petitioner from May of 2015 through June of 2015. By that point, petitioner's attendance rate for parenting services was approximately fifty percent. During her improvement period, petitioner continued to exhibit issues regarding her children's perceived medical conditions, as evidenced by a file petitioner kept in regard to the children's health. As late as mid-2015, petitioner discussed her belief that the children suffered from neurological conditions and that one child required leg braces. In spite of these beliefs, however, the DHHR asserted that the children had required no treatment or medications since their removal from petitioner's care.

In September of 2015, petitioner's oldest child, fourteen-year-old M.G., sent a letter to the circuit court indicating that, although she loved petitioner, she did not wish to be returned to her care. M.G. further indicated that she did not believe petitioner had truly changed and that the

_____

[4]According to the record, petitioner did complete an initial psychological evaluation that deferred psychiatric treatment recommendations.

3

children would not receive proper care if reunited with her. The following month, the circuit court held a dispositional hearing, during which it determined there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. As such, it terminated petitioner's parental rights to the children by order entered in April of 2016. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds no error in regard to petitioner's allegation that the improvement period below was inappropriate. In support, petitioner argues that her improvement period was inappropriate because it failed to address the deficiencies in her parenting as identified in the family case plan and instead focused on irrelevant issues. According to petitioner, the subject family case plan was "undoubtedly ambiguous" in its description of the underlying problems in the home, the issues she needed to correct, and the overall goal. The Court, however, does not agree, as the family case plan clearly identified petitioner repeatedly subjecting the children to unnecessary medical treatment and their truancy as the problems present. The family case plan further indicated that petitioner needed to change certain issues regarding her own feelings and emotional needs as a way to put her children's needs, including education, ahead of her own. Further, the family case plan clearly set a goal for petitioner of participating in services, including individual and family therapy, adult life skills and parenting education, and a psychological evaluation and recommended treatment, in an attempt to improve her ability to properly fill her role as a parent and to correct issues with the family unit as a whole. This information is in keeping with our prior holdings regarding family case plans, wherein we have held that

> "[t]he purpose of the family case plan as set out in W.Va. Code [§] 49-6D-3(a) [now W.Va. Code § 49-4-408(a)] . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987).

4

Syl. Pt. 2, *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003). It is clear that the family case plan in this matter met the applicable requirements as set forth by statute and our prior holdings.

Moreover, it is important to note that the record is devoid of petitioner ever objecting to the family case plan during the proceedings below. This Court has routinely held that a party must assert a right in the circuit court to preserve the issue for appellate review. *See State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal.") (citation omitted). While petitioner argues that her assignment of error is predicated on the allegation that the services provided during her improvement period were not related to the underlying issues of abuse and neglect that needed to be corrected, her argument clearly hinges on her allegation regarding the family case plan's ambiguity. Moreover, all of the services that petitioner alleges addressed irrelevant issues were laid out in the family case plan as services designed to achieve the specific goal of reunification of petitioner and her children. In short, petitioner's assignment of error is based upon the implementation of the services set forth in the family case plan. Because petitioner failed to object to the family case plan below and, in fact, actively assisted in its creation during the MDT process, she is not entitled to relief in this regard on appeal.

Next, the Court finds no error in regard to petitioner's allegation that the evidence upon which the circuit court based termination was insufficient. According to petitioner, the circuit court terminated her parental rights upon improper evidence regarding issues beyond the scope of the petition, including the allegation that she may suffer from Munchausen by proxy, a condition she was never diagnosed with, and the letter from M.G. indicating that she did not wish to be returned to petitioner's care. On appeal, petitioner argues that several parties and the circuit court had a "near obsession" with Munchausen by proxy and that it should have been given no weight at all. Petitioner also argues that M.G. never requested that petitioner's parental rights be terminated, nor did the child express that she was happier in the absence of excessive medical treatment or due to attending school full time. Moreover, petitioner alleges that in considering M.G.'s letter, the circuit court erroneously found that M.G. was "better off" in the foster home, which petitioner alleges is an inappropriate consideration at disposition in abuse and neglect proceedings. Upon our review, however, the Court finds that the evidence at disposition was sufficient to support termination of petitioner's parental rights.

We have previously held that "'[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.' Syl. Pt. 6, *In re: Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973)." Syl. Pt. 3, *In re Jessica M.*, 231 W.Va. 254, 744 S.E.2d 652 (2013). Contrary to petitioner's arguments regarding the circuit court's consideration of allegations of Munchausen by proxy and the letter from M.G., the record is clear that the circuit court considered voluminous additional evidence that overwhelmingly supported termination of petitioner's parental rights. This includes evidence that, absent a specific diagnosis of the condition, petitioner exhibited characteristics associated with Munchausen by proxy that, in and of themselves, resulted in abuse and neglect to the children, such as exaggeration and misrepresentation of the children's medical issues. Moreover,

the DHHR presented evidence of how this abuse negatively impacted the children, as they required instruction on how to properly identify issues with their own health in order to make appropriate determinations about when to seek care and suffered developmental delays associated with the perceived medical issues.

Further, the DHHR presented evidence that petitioner failed to remedy this condition, as evidenced by her continued improper focus on the children's health during the proceedings below. According to one service provider, petitioner would simply redirect her focus from the children's perceived medical conditions to her own, as the provider witnessed petitioner's focus shift "back and forth" during the proceedings. Moreover, the provider testified that, "at least one time per meeting," petitioner would address issues regarding either "her own health, the children's health, or what the children were unable to do." A different service provider also testified to petitioner's continued improper focus on the children's health, as evidenced by the fact that petitioner kept a file of the children's medical records throughout the proceedings. The provider also testified that petitioner told her that one of the children required leg braces because petitioner noticed the child's feet turning inward during a visitation in May or June of 2015.

According to testimony, petitioner's issues stemmed from her failure to make "sound decisions for her children" and the fact that petitioner was generally "not functional." The evidence further established that petitioner's poor decision-making abilities not only contributed to the children's abuse and neglect, but also negatively impacted petitioner's compliance with services and made assessing her progress difficult. Specifically, evidence from a service provider indicated that petitioner exhibited poor-decision making by routinely choosing to travel to the Commonwealth of Pennsylvania for extended periods of time, which resulted in several missed service appointments and visits with the children. The evidence further showed that petitioner continued to miss visits and services even after the DHHR explained that her failure to see the children as scheduled had a negative impact on their behavior. Ultimately, a provider testified that petitioner was unable to remedy the conditions of abuse and neglect despite extended services to correct the same. As such, it is clear that the circuit court was presented with sufficient evidence upon which to base termination, as the evidence outlined above amounts to clear, cogent, and convincing proof of petitioner's inability to substantially remedy the conditions of abuse and neglect sufficient to achieve reunification with the children. Importantly, the evidence set forth above is sufficient to support termination in the absence of the allegations that petitioner suffers from Munchausen by proxy or that M.G. did not wish to be returned to petitioner's care.

Contrary to petitioner's argument that the circuit court simply made conclusory findings that were not in line with the evidence presented, the circuit court used this evidence as the basis for the finding that there was no reasonable likelihood the conditions of abuse or neglect could be substantially corrected. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one where

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

The evidence in this matter is clear that, although petitioner complied with some services, she overwhelmingly failed to fully comply, as evidenced by her many absences from services and visits and the fact that the conditions of abuse and neglect persisted throughout the proceedings. Moreover, the circuit court also found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings. Further, as outlined above, this Court "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." *Cecil T.*, 228 W.Va. 91, 717 S.E.2d at 875, Syl. Pt. 1, in part (quoting Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)). While petitioner argues that the evidence below was contradictory, our review of the record does not reveal any conflict in regard to the facts set forth above regarding petitioner's inability to substantially correct the conditions of abuse and neglect. As such, we find no error.

In light of the fact that we have determined that the circuit court's findings are not in error, we similarly find no merit to petitioner's argument that the circuit court erred in failing to impose a less-restrictive dispositional alternative. In support of this argument, petitioner sets forth several alternative dispositional scenarios, such as returning the children to the care of her roommate, R.B., or returning them to her care with a requirement that she receive prior authorization from the DHHR to have the children receive medical care. The Court, however, notes that petitioner's argument in this regard ignores the fact that, upon its findings that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's welfare, the circuit court was required to terminate her parental rights pursuant to West Virginia Code § 49-4-604(b)(6). As such, we find no error in the circuit court's disposition below.

Finally, petitioner argues that her due process rights were violated because she was forced to defend against allegations beyond the "definite and particular" description of abuse and neglect from the original petition, as required by Rule 18(c) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. However, the Court does not agree, as this argument misrepresents the evidence. The record is clear that throughout the pendency of the proceedings below, the circuit court appropriately addressed the underlying conditions of abuse and neglect and petitioner's efforts, or lack thereof, to correct them. For instance, petitioner argues that she was required to defend against allegations that she failed to provide stability to the children by virtue of her frequently fluctuating relationship status with the same or changing partners. The record shows, however, that the DHHR did not allege this to be a condition of abuse and neglect upon which it sought termination of her parental rights. To the contrary, the evidence shows that the DHHR expressed concerns over how petitioner's failure to exhibit stability in her personal relationships was detrimental to services designed to remedy the underlying issues of abuse and neglect as alleged in the petition. Specifically, one provider testified that petitioner's "consistency . . . and her choice of companions [were] consistent issues throughout" the case, as evidenced by petitioner's inability to put her children's needs above her own. As a result, one service provider testified that petitioner became "very involved on the phone with her . . . fiancé to the point that it interfered with her time allocated to be spent visiting

with the children." Moreover, testimony established that petitioner's relationship with her then-fiancé was addressed at multiple MTD meetings, insomuch as the introduction of the fiancé and his child to petitioner's children required therapeutic efforts for the children, especially M.G. who was reported to find the issue difficult. Evidence also established that petitioner's residence fluctuated as a result of her changing relationship status, and further M.G. expressed concerns about the negative impact that moving had on the children.

The evidence below also established that petitioner exhibited issues with mental health throughout the proceedings, as testified to by the psychologist who served as petitioner's therapist below. According to the psychologist, petitioner's anxiety and past trauma disorders were a root cause of the abuse and neglect to the children as alleged in the petition. While petitioner argues that she was forced to defend against allegations of mental illness when the same were not specifically alleged in the petition, it is clear that these issues were identified through remedial services as factors contributing to the abuse and neglect that needed to be resolved before petitioner could achieve reunification. As such, it is clear that petitioner was not forced to defend against extraneous allegations, as she alleges. Instead, the circuit court heard evidence of relevant issues surrounding petitioner's inability to properly comply with services below and the impact these issues had on the subject children.

Petitioner further argues that her due process rights were violated by the circuit court's acceptance of M.G.'s letter regarding her wishes and in conducting hearings in the absence of petitioner or her counsel. As to the first issue, the record is clear that no due process violation occurred, as petitioner was provided the letter well in advance of the dispositional hearing. Moreover, the circuit court was required to consider this letter in reaching its dispositional determination. Pursuant to West Virginia Code § 49-4-604(b)(6)(C), when reaching disposition, a circuit court "shall give consideration to the wishes of a child fourteen years of age or older . . . regarding the permanent termination of parental rights." The record is clear that M.G. was fourteen years old at the time of the dispositional hearing and specifically indicated to the circuit court that she did "not wish to return to [petitioner's] care [or] custody." While petitioner argues that M.G. did not address whether she wished petitioner's parental rights to be terminated, the Court does not agree. Although the child may not have specifically used the phrase "termination of parental rights," the thrust of her four-page letter was that she did not wish to reside with petitioner because of concerns for her well-being and the well-being of her siblings. Moreover, the record is clear that petitioner not only failed to object to the letter's introduction, but also failed to request any testimony concerning the letter from M.G. Pursuant to Rule 8(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings, "all children remain competent to testify" in abuse and neglect proceedings, subject to certain exceptions. Additionally, Rule 8(b) provides for the availability of in camera interviews of children in these proceedings if it is determined that such testimony should be obtained outside a parent's presence. The record is devoid of any such request by petitioner for M.G. to testify. Accordingly, she is entitled to no relief in this regard.

Similarly, we find no violation of petitioner's due process rights in regard to hearings conducted in her absence or the absence of her counsel. On appeal, petitioner does not allege that these hearings were improperly noticed, and nothing in the record indicates as such. Instead, it appears that both petitioner and her counsel chose not to attend these review hearings, although

counsel did sometimes send someone else on petitioner's behalf. Petitioner makes much of these "ex parte" actions by the circuit court, but we disagree with petitioner's assertion, as her failure to appear for a properly noticed hearing does not render subsequent discussions on the record at that hearing improper. Moreover, petitioner can point to no prejudice resulting from the manner in which the review hearings were held, as her improvement periods continued through the proceedings. As such, we find no error in this regard.

For the foregoing reasons, we find no error in the circuit court's April 6, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: **September 19, 2016**


**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II