**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**


*In re* **D.S.**

**No. 24-388** (Kanawha County CC-20-2022-JA-459)


**MEMORANDUM DECISION**


Petitioner Mother S.U.[1] appeals the Circuit Court of Kanawha County's May 23, 2024, order terminating her parental rights, arguing that the circuit court erred by denying her request for an improvement period and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2022, the DHS filed a petition alleging that the petitioner abused and neglected the child.[3] According to the DHS, the child disclosed that the petitioner hit him and that her boyfriend, D.R., who is a registered sex offender, "held a knife to his private parts." The DHS further alleged that the then-seven-year-old child was still wearing pull-up diapers to school, causing hygiene issues. In November 2022, the DHS filed an amended petition noting that the child had undergone a Child Advocacy Center interview during which he disclosed that the petitioner and D.R. hit each other when angry. The DHS alleged that the petitioner physically abused the child and neglected the child by failing to provide, among other things, necessary medical care, clothing, and education.

---

[1] The petitioner appears by counsel Leah Perry Macia. The West Virginia Department of Human Services appears by Attorney General John B. McCuskey and Assistant Attorney General James "Jake" Wegman. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Catherine Bond Wallace appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petition included other adults and children that are not at issue here.

1

In December 2022, the circuit court held an adjudicatory hearing at which a school nurse testified as to the child's poor hygiene and disclosures of abuse. The petitioner also testified and denied the allegations in the petitions. In the resulting adjudicatory order, the court found that the petitioner neglected the child's health and hygiene and failed to protect him from physical abuse at the hands of D.R. As such, the court determined that the petitioner abused and neglected the child. The court ordered the petitioner to begin supervised visitations with the child and to submit to a parental fitness evaluation. In January 2023, the petitioner completed her evaluation and received a poor prognosis for improved parenting.

In May 2023, the DHS filed a motion to terminate the petitioner's parental rights due to her failure to acknowledge the conditions that led to the filing of the initial petition and continual denial that she did anything wrong. In the motion, the DHS stated that the petitioner participated in services but did not understand why the child could not be returned to her custody and was "merely going through the motions" without acknowledging or attempting to correct the conditions of abuse and neglect.

The court held several dispositional hearings. During a May 2023 dispositional hearing, the psychologist who administered the petitioner's parental fitness evaluation testified that the petitioner's overall intellectual functioning was in the "borderline" category, but not at the level of an intellectual disability and that she understood the allegations made against her. The psychologist expressed concern that the petitioner was distracted by problems in her interpersonal relationships and opined that she demonstrated an "inadequate commitment" to solving those problems. After the hearing, the petitioner filed a written motion for a post-dispositional improvement period. At a July 2023 dispositional hearing, the guardian informed the parties that the child underwent two surgeries and had twelve teeth extracted due to long-term poor oral hygiene. Next, the visitation supervisor testified, explaining that the petitioner failed to prepare for visits and, instead, usually brought food and toys packed by the maternal grandmother. The visitation supervisor further testified that she observed no change in the petitioner's parenting approach in the eight months she observed visits. A DHS employee testified that while D.R. no longer lived at the petitioner's home, the petitioner stayed in contact with him and had stated throughout the case that the only reason she ended her relationship with D.R. was because of the abuse and neglect proceedings. The visitation supervisor further testified that at no point did the petitioner acknowledge her or D.R.'s abuse and neglect of the child and she continually asked why the child could not simply be returned to her care. The petitioner testified that she failed as a parent but was unable to articulate with specificity what aspects of her parenting approach she should change or improve. In the resulting order, the circuit court found that the petitioner "failed to acknowledge her role in the abuse and neglect of her child" and failed to "fully end her relationship with [D.R.], who [was] previously found to have physically abused the minor child" and that "there [were] no additional services that could be offered to the [petitioner] that would or could remedy the conditions of abuse and neglect any time in the near future." Ultimately, the court determined that reunification with the petitioner was not in the child's best interest and terminated her parental rights. It is from the dispositional order that the petitioner appeals.[4]

---

[4] The father's rights were terminated earlier in the proceeding. The child's permanency plan is adoption in the current placement.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that a post-dispositional improvement period was warranted because she fully participated in services throughout the proceedings.[5] Indeed, in order to receive a post-dispositional improvement period, a parent must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(3)(B). However, "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Ample evidence supports the circuit court's determination that the petitioner "failed to acknowledge her role in the abuse and neglect of her child" and failed to fully end her relationship with her abusive boyfriend. Thus, the circuit court did not abuse its discretion by denying the petitioner's request for a post-dispositional improvement period. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

Next, the petitioner asserts that the circuit court failed to find that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." W. Va. Code § 49-4-604(c)(6).[6] However, as set forth above, the petitioner's failure to acknowledge the problems that led to her adjudication resulted in them being untreatable. Indeed, a circuit court's finding that there is "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(d). By consistently failing to acknowledge the abuse and neglect suffered by the child, the petitioner demonstrated that she was unable to remedy those conditions *on her own*. The court also clearly determined that the petitioner

---

[5] The petitioner contends that improvement periods "shall be allowed unless the court finds compelling circumstances to justify a denial." *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000). However, we must note that *In re Emily* was decided under a prior version of the statute governing improvement periods, now found at West Virginia Code § 49-4-610. "Under the 2015 recodification [of Chapter 49 of the West Virginia Code], there is no comparable provision stating that courts *shall* grant parental requests for improvement periods in the absence of compelling circumstances justifying a denial." *State ex rel. S.W. v. Wilson*, 243 W. Va. 515, 520 n.11, 845 S.E.2d 290, 295 n.11 (2020).

[6] The petitioner also briefly argues that the court's dispositional order failed to include a description of the DHS's reasonable efforts to preserve the family. However, the petitioner cites to no authority requiring such findings. Instead, West Virginia Code § 49-4-604(c)(6) simply requires that "in fixing its dispositional order the court shall consider" certain factors, including the DHS's reasonable efforts at preserving the family. *Id.* at 604(c)(6)(C)(iv). Given that the court found that the DHS made such efforts in providing the petitioner with remedial services, it is clear the circuit court considered this factor as required.

demonstrated an inadequate capacity to solve the problems of abuse or neglect *with help* in finding that "there [were] no additional services that could be offered to the [petitioner] that would or could remedy the conditions of abuse and neglect any time in the near future." Based upon the foregoing, it is clear that the court's findings were consistent with the conclusions required by West Virginia Code § 49-4-604(c)(6). Therefore, the record reflects that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, and the court's order is sufficient in this regard. The petitioner also asserts that the court's determination that reunification or continuation in the petitioner's home was not in the child's best interests were unsupported by its factual findings. However, the aforementioned evidence of the petitioner's failure to acknowledge the abuse and neglect supports the court's determination in this regard.[7] Thus, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 23, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: June 26, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

---

[7] The petitioner also argues that the court erred by proceeding to adjudication and disposition after concerns about her competency were raised and that the appointment of a guardian ad litem for the petitioner was appropriate. However, the psychologist's testimony indicated that the petitioner was able to understand the allegations against her. Further, the petitioner cites to no portion of the record where she moved for a guardian ad litem and, therefore, the court had no opportunity to rule upon the same. As such, the petitioner waived her right to raise this issue on appeal and is entitled to no relief in this regard. *See State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal.").

4