STATE OF WEST VIRGINIA

FILED

June 19, 2017

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: I.C., B.C., W.C., and J.C.-1

No. 17-0240 (Kanawha County 16-JA-289, 16-JA-290, 16-JA-291, & 16-JA-292)

## MEMORANDUM DECISION

Petitioner Father J.C.-2, by counsel Shawn D. Bayliss, appeals the Circuit Court of Kanawha County's February 21, 2017, order terminating his parental rights to I.C, B.C., W.C., and J.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in: (1) granting the DHHR leave to file an amended petition; (2) adjudicating him of abusing and neglecting the children; (3) terminating his parental rights; (4) taking testimony from witnesses at the dispositional hearing in the absence of a disclosure from the DHHR pursuant to Rule 30 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings; and (5) denying him post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, the DHHR filed an abuse and neglect petition against the parents. According to the petition, the DHHR received a referral that a fourteen-year-old child was babysitting the children and locked them in a bedroom. When a Child Protective Services ("CPS") worker arrived at the home, the children were not locked in the room in question, but the mother did indicate that the lock on the bedroom door was used to keep the children from

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one child and petitioner share the same initials, we will refer to them as J.C.-1 and J.C.-2, respectively, throughout this memorandum decision.

making a mess by dragging items from the room. According to CPS, the children were not dressed, with the exception of the youngest child who was wearing a diaper. CPS requested that the mother clothe the children, and she complied. However, over the extended time CPS was in the home, the children repeatedly removed their clothes. CPS also noted that the children were covered in feces and there was feces in the children's bedroom and on their mattress. The children shared one bedroom in the three-bedroom apartment and also shared one mattress with no sheets. The mother slept in one of the other bedrooms and the third bedroom contained a couch, tanning bed, and exercise equipment. The mother also indicated that the children's babysitter resided with her several days out of the week. CPS further observed an open-topped cage in the living room, which the mother stated was for her pet rats that were deceased. According to CPS, the cage contained a child-sized chair and a child's sippy cup.

After investigating the matter, the DHHR determined that the children were developmentally delayed. Child J.C.-1, then four years old, could say only the words "zombie," "chips," and "mommy," while the remaining children could not say their own names. In regard to petitioner, the petition alleged that he had not had contact with the children or the mother since 2015, pursuant to a domestic violence protective order. Based on the conditions in the home, the DHHR implemented two protection plans, but both were unsuccessful. Ultimately, the DHHR alleged that the parents failed to provide the children with necessary food, clothing, supervision, housing, and financial support. The petition further alleged that the parents were not sufficiently motivated to provide for the children.

In June of 2016, the circuit court held a preliminary hearing, during which it ordered the DHHR to provide petitioner remedial services, including random drug screens and visitation with the children. Following a failed drug screen, the DHHR filed an amended petition in July of 2016 to include allegations against petitioner based on his abuse of marijuana and hydrocodone, for which he did not have a valid prescription, and his refusal to submit to a second drug screen.

The circuit court held an adjudicatory hearing in August of 2016. Petitioner did not attend the hearing in person, but he was represented by counsel. The DHHR moved, without objection, to incorporate all previous testimony, information regarding the domestic violence protective order against petitioner, and other evidence regarding petitioner into the adjudicatory hearing. Based on the evidence, the circuit court found that petitioner's substance abuse issues affected his ability to properly parent the children. The circuit court further found that petitioner failed to comply with its order by refusing to submit to a drug screen at the prior hearing and, therefore, considered the failure to screen as evidence of continued drug use. Further, as evidenced by the pending domestic violence protective order, the circuit court found that petitioner committed domestic violence in the home. Finally, the circuit court found that petitioner was aware that the home was unfit for habitation, yet took no steps to protect the children. Based on this evidence, the circuit court ruled that petitioner abused and neglected the children. The circuit court additionally ordered that petitioner could not exercise visits with the children without passing a drug screen.

In October of 2016, the circuit court held a hearing, during which it found that the DHHR failed to timely file a case plan in the proceeding. The circuit court further ordered the DHHR to

provide petitioner with additional services, including a psychological and parental fitness evaluation, adult life skills, and parenting education.

In January of 2017, the circuit court held a dispositional hearing. Petitioner again failed to appear, although he was represented by counsel. According to testimony from DHHR personnel, petitioner failed to participate in the services offered; failed to participate in drug screens; continued to abuse drugs; failed to visit the children; violated a prior order regarding contact with the children; and failed to maintain contact with the DHHR. Based upon petitioner's failure to participate in services or benefit from the same, the circuit court found that he was addicted to controlled substances and/or drugs to the extent that proper parenting skills were seriously impaired. The circuit court further found that petitioner failed to follow through with the recommended treatment that would have improved his ability to adequately parent. As such, the circuit court terminated petitioner's parental rights and denied him post-termination visitation with the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

---

[2]Petitioner's parental rights to all the children were terminated below, while the mother's parental rights to the children remain intact. According to the parties, the proceedings against the mother are still pending in circuit court and she has been granted an improvement period. However, the DHHR indicates that the mother's improvement period has not been successful and that it will seek termination of her parental rights. According to the parties, the children currently reside in specialized foster homes. The guardian states that the children's needs necessitated two separate foster homes and that sibling visitation is taking place. The DHHR indicates that the permanency plan for the children is adoption in their respective foster homes, pending termination of the mother's parental rights.

At the outset, it is important to note that petitioner's brief on appeal incorrectly asserts that "no allegations were levied against [him]" in the original petition. This is an inaccurate representation of the DHHR's initial petition in this matter, which clearly indicated that the "parents . . . failed to provide the children with the necessary food, clothing, supervision and housing" based on the deplorable conditions in the home. While petitioner refers to this as "boilerplate" language, the fact remains that the DHHR clearly alleged that petitioner, in addition to the mother, abused and/or neglected the children by allowing them to live in the mother's home. According to petitioner, the DHHR could not allege abuse or neglect on his part because it also alleged that he had not had contact with the mother or the children for six months. Again, we do not agree. The record shows that petitioner's lack of contact was the result of a domestic violence protective order against him, and the imposition of such an order does not absolve petitioner of his duty to provide the children with necessities, such as appropriate supervision and shelter.[3] As such, the Court finds that the DHHR's initial petition in this matter clearly alleged that petitioner abused and neglected the children.

Turning to petitioner's first assignment of error, he argues that the circuit court erred in permitting the DHHR to amend the petition to include additional allegations regarding his substance abuse. According to petitioner, this was improper because the only evidence of his substance abuse occurred when he failed a drug test following the preliminary hearing. Because the children had already been removed from the home, petitioner argues that his substance abuse could not properly form the basis of an amended petition because there was no evidence he ever abused drugs in the children's presence. We do not agree.

Rule 19(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings clearly states that "[t]he court may allow the petition to be amended at any time until the final adjudicatory hearing begins, provided that an adverse party is granted sufficient time to respond to the amendment." Here, petitioner does not allege that he was denied sufficient time to respond to the amendment. His only argument on appeal is that amendment was improper because the allegations contained therein related to a time that the children were not in his care. Pursuant to West Virginia Code § 49-1-201, a neglected child is one "[w]hose physical or mental health is harmed *or threatened by* a present refusal, failure or inability of the child's parent, guardian or

---

[3]On appeal, petitioner argues that the domestic violence protective order in question was never submitted to the circuit court or otherwise admitted to the circuit court's record such that it should have been considered as evidence in the underlying proceedings. However, the record on appeal contradicts petitioner's argument. Specifically, the transcript of petitioner's adjudicatory hearing shows that the DHHR moved to incorporate certain evidence into the adjudicatory hearing. The transcript shows that the circuit court asked the DHHR if it sought to incorporate "whatever testimony was taken[,]" to which the DHHR replied "Yes. Additionally, a part of that information was the protective order that the . . . mother had against [petitioner] . . . and we would move to take all of the evidence adduced with regard to [petitioner] for the purposes of adjudication." The record further shows that petitioner did not object to this incorporation. While the domestic violence protective order was not made a part of the appendix on appeal to this Court, the record shows that it was properly considered in the circuit court.

4

custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education . . . ." (Emphasis added). In the present matter, the DHHR alleged that petitioner's substance abuse, as evidenced by his failed drug screen and refusal to submit to a second screen, resulted in his inability to provide the children with appropriate supervision and shelter, among other necessities. It was unnecessary for the children to be in his custody in order for his substance abuse to threaten their wellbeing due to his inability to properly parent them. Simply put, the Court finds no merit to petitioner's argument that the DHHR was barred from filing an amended petition based on these new allegations. Moreover, if petitioner believed that the amended petition was deficient in that it failed to properly allege conduct that constituted abuse and/or neglect, the proper remedy would have been to move to dismiss the same. Petitioner does not assert that he made such motion below. Accordingly, we find no error in the circuit court permitting the DHHR to amend the petition at issue.

Next, petitioner argues that the evidence at adjudication was insufficient to adjudicate him as an abusing parent. According to petitioner, no evidence below established that he ever abused drugs around the children, committed an act of domestic violence in the children's presence, or that his parenting skills were impaired to any degree. As such, he argues that the circuit court's finding that he is an abusing parent was erroneous. We do not agree. In regard to the DHHR's burden of proof at adjudication, we have held as follows:

> "W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Here, the evidence is clear that petitioner failed to provide the children with proper supervision, and shelter and, at a minimum, neglected the children.

Again, petitioner makes much of the alleged failure of the DHHR to introduce any evidence regarding the domestic violence protective order against him. However, the circuit court heard evidence that such an order was pending and was the reason petitioner did not have contact with the children in the time period shortly before the petition's filing. Further, petitioner fails to acknowledge that the evidence regarding the domestic violence protective order was uncontroverted, as he failed to introduce any evidence that such an order was not in place. Accordingly, the circuit court specifically found that "[petitioner] committed domestic violence in the home against the . . . mother, resulting in a domestic violence protective order." As such, the DHHR clearly established that domestic violence occurred in the home. Moreover, the mother testified to the fact that, despite the domestic violence protective order, petitioner could see the children "anytime he wants" and that he had come to her home to provide the children with diapers. While it is true that petitioner had not seen the children for approximately six months prior to the petition's filing, the circuit court nevertheless found that petitioner "knew that the . . . mother's home was not suitable for human habitation and failed to protect the children from that unwholesome situation." We agree. Petitioner was not absolved of his duty to

5

ensure that the children received the necessary supervision and shelter simply because he chose to engage in domestic violence such that he was ordered to have no contact with the children. On the contrary, the record shows that petitioner's willful refusal to provide the children with these needs resulted in their neglect. Accordingly, we find that the DHHR met its burden at adjudication and the circuit court did not err in ruling that petitioner was an abusing parent.

Next, petitioner argues that the circuit court erred in terminating his parental rights to the children.[4] In support, petitioner argues that termination was improper because there were less-restrictive dispositional alternatives and because the services the DHHR offered did not address any alleged deficiencies in his parenting. Moreover, petitioner argues that "[t]he correction and improvement of parenting skills are impossible to address and measure" due to the fact that the children were not in his custody in the months preceding the initial petition's filing. Upon our review, we find no merit to petitioner's arguments. First, petitioner admits that his "actions or omissions, at worst, amounted to not fully participating in the DHHR's services." In fact, the circuit court specifically found that "[t]he evidence against [petitioner] is uncontroverted" and that he failed to participate in any services offered. This included drug screens and visitations with the children, which were predicated on negative drug screens.

"We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Here, petitioner was aware that visitation with the children required that he provide a negative drug screen. Despite this knowledge, petitioner failed one screen and thereafter refused to submit to further screening. As such, it is clear that petitioner displayed an almost nonexistent level of interest in visiting the children. Further, the evidence established that petitioner "failed to maintain contact with the CPS case manager and any service provider." Simply put, there is no evidence that petitioner took any steps to comply with services below.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes one in which

---

[4]A significant portion of petitioner's argument in support of this assignment of error is predicated on his allegation that, because the circuit court erred in permitting the DHHR to amend the petition and in adjudicating him as an abusing parent, termination was therefore necessarily improper. As set forth above, the Court finds no error in either the circuit court's granting of leave for the DHHR to file an amended petition or in its adjudication of petitioner as an abusing parent. Accordingly, petitioner is entitled to no relief in support of this assignment of error, to the extent such argument is predicated on these other alleged errors.

6

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

Here, the circuit court specifically made this finding in regard to petitioner based on his willful refusal to participate in any services below. While petitioner argues that the services offered were insufficient to remedy the conditions of abuse and neglect, we do not agree. The record is clear that the circuit court specifically ordered the DHHR to provide petitioner with multiple services, including a psychological and parental fitness evaluation, adult life skills, and parenting education. Despite these services being offered, petitioner failed to avail himself of the same. Moreover, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon findings that there is no reasonable likelihood the parent can substantially correct the conditions of abuse and neglect in the near future and when necessary for the children's wellbeing. Further, we have held as follows:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, petitioner's argument that a less-restrictive dispositional alternative was appropriate is without merit. As such, we find no error in the circuit court's termination of petitioner's parental rights upon these findings.

Next, petitioner argues that the circuit court erred in hearing testimony at the dispositional hearing in the absence of a disclosure from the DHHR pursuant to Rule 30 of the Rules of Procedure for Child Abuse and Neglect Proceedings. According to Rule 30,

[a]t least five (5) judicial days prior to the disposition hearing, each party shall provide the other parties, persons entitled to notice and the right to be heard, and the court a list of possible witnesses, with a brief summary of the testimony to be presented at the disposition hearing, and a list of issues of law and fact. Parties shall have a continuing obligation to update information until the time of the disposition hearing.

While the record shows that the DHHR filed no such disclosure, the record is also clear that petitioner did not object to the presentation of witnesses at the dispositional hearing or otherwise

object to the DHHR's failure to file its disclosure. As such, petitioner has waived his right to raise this issue on appeal. *See State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal.").[5] For this reason, we decline to grant petitioner relief in this regard.

Finally, the Court finds no error in the circuit court's denial of post-termination visitation below. In support of this assignment of error, petitioner argues that his bond with his children necessitated post-termination visitation. However, petitioner cites to no evidence of his alleged bond with the children and admits that he had not contacted them for several months prior to the petition's filing. In addressing post-termination visitation, we have held as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Based on the evidence, the circuit court found that "[p]ost-termination visitation is contrary to the children's best interests . . ." and denied the same. On appeal, petitioner provides no evidence to the contrary, beyond his own unsupported assertion that he shares a bond with the children. He further continues to diminish his role in the conditions the children endured by arguing that his "conduct did not constitute any active abuse, but passive abuse such that supervision could thus ensure the children's safety." However, petitioner fails to acknowledge the fact that he did not avail himself of supervised visitation with the children during the proceedings because of his willful refusal to submit to drug screens. It is, therefore, unlikely that petitioner would engage in supervised visitation with the children following termination of his parental rights, even if the circuit court

---

[5]On appeal, petitioner argues that the requirements of Rule 30 are jurisdictional in nature. In support of this argument, petitioner relies on the following holding: "[c]ircuit courts must comply with Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect by providing notice of the date, time, and place of the disposition hearing to all parties, their counsel, and the CASA representative, if one was appointed." Syl. Pt. 2, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999). Based on this holding, petitioner states that "one can reasonably conclude that *the procedural rules* such as Rule 30 . . . *are likewise jurisdictional* in nature." The Court does not find this argument compelling and, accordingly, finds that petitioner waived his right to assert error in the DHHR's failure to file its required disclosures when he failed to object in the proceedings below.

had found that the same was appropriate. For these reasons, we find no error in the circuit court denying petitioner post-termination visitation with the children.

This Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the children are placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 21, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: June 19, 2017

9

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker