**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **G.B., M.B.-1, M.B.-2, and J.B.**

**No. 18-0577** (Wetzel County 2017-JA-013, 2017-JA-014, 2017-JA-015, and 2017-JA-016)

## MEMORANDUM DECISION

Petitioner Father M.B.-3, by counsel Thomas E. White, appeals the Circuit Court of Wetzel County's May 24, 2018, order terminating his parental rights to G.B., M.B.-1, M.B.-2, and J.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David C. White, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother. Specifically, the DHHR alleged that the children's babysitter brought them to the local DHHR office after the parents dropped them off at her home filthy, improperly clothed, and hungry. The DHHR alleged that the parents failed to provide for the children by choosing to spend their limited resources on traveling to Pennsylvania to renew their prescriptions for Suboxone and Subutex. Further, the DHHR indicated that the parents paid two of the children to urinate in the parents' test cups in order to produce a clean sample to receive the drugs.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as M.B.-1, M.B.-2, and M.B.-3, respectively, throughout the memorandum decision.

In November of 2017, petitioner stipulated to certain allegations contained in the petition. Namely, petitioner stipulated to leaving the children with the babysitter in a filthy, hungry, and improperly clothed condition so that he and the mother could travel to Pennsylvania and use their limited funds to obtain Suboxone. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and granted him a post-adjudicatory improvement period.

While the terms and conditions of petitioner's improvement period had been discussed with him at a multidisciplinary team ("MDT") meeting in October of 2017, the circuit court ordered that they were to be officially put in writing and agreed to by petitioner on February 1, 2018. Petitioner agreed to maintain sobriety and submit to drug screens, actively participate in parenting and adult life skills classes, participate in visits with the children, maintain suitable housing, contact his caseworker at least once per week, maintain a working telephone, maintain employment, and obey the law.

In April of 2018, the circuit court held a dispositional hearing. Petitioner appeared and was represented by counsel, who advised the circuit court that petitioner was recently incarcerated for possession of methamphetamine. The DHHR presented the testimony of a Child Protective Services ("CPS") worker, who testified that petitioner failed to comply with every aspect of his post-adjudicatory improvement period. Petitioner never contacted the DHHR and failed to respond to any attempts to contact him. The CPS worker testified that petitioner failed to submit to any drug screens throughout his improvement period. Further, petitioner failed to participate in visitation with the children and had not seen them since they were removed from his care in July of 2017, failed to maintain employment, and was homeless for a portion of the underlying proceedings.

A second CPS worker testified that there were no other services the DHHR could have offered to petitioner due to his failure to maintain contact. Specifically, the worker testified that without his participation, the DHHR had no knowledge of whether petitioner was capable of correcting the conditions of abuse and neglect and could not provide him assistance.

During his testimony, petitioner minimized the conditions of abuse and admitted that he did not attend parenting and adult life skills classes, testifying "I've always had my kids, and I take care of my kids." Petitioner stated that he had established a permanent residence only one month prior to the hearing and was living in a two-bedroom home with a friend. Petitioner further admitted that he did not submit to drug screens or attend any substance abuse treatment, but insisted that he was clean and stated "I did it all on my own." Finally, although the circuit court had granted him additional time to comply with his improvement period since the terms and conditions had not been reduced to writing, petitioner admitted that he knew what the terms were prior to the grant of additional time and, nonetheless, went "[a]bsent without leave."

After hearing evidence, the circuit court found that petitioner failed to respond to or follow through with his family case plan as evidenced by his lack of communication with anyone in the proceedings and his failure to initiate any substantial changes in his parenting, including maintaining a suitable residence, obtaining employment, seeking treatment for his drug addiction, or attending parenting classes. As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near

future and that the children needed continuity in care and caretakers. It is from the May 24, 2018, dispositional order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights in several ways. First, petitioner argues that the circuit court erred in adjudicating him solely on one isolated incident where he admittedly left his children improperly clothed, dirty, and unfed in a babysitter's care and used his resources to travel to another state to obtain Suboxone. According to petitioner, this single incident was insufficient evidence upon which to terminate his parental rights. Second, petitioner argues that, following his stipulation, the circuit court had a duty, per Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, to provide him with a statement of problems to be addressed at disposition, but failed to do so, and therefore improperly terminated his parental rights.[3] Specifically, petitioner avers that, at the dispositional hearing, the circuit court discussed matters such as his drug addiction and lack of suitable housing, which were not directly related to the stipulation and, as such, should not have been considered. Last, petitioner argues that the circuit court erred in

---

[2]The parents' parental rights were terminated during the underlying proceedings. G.B., M.B.-1, and M.B.-2 were placed in a foster home with a permanency plan of adoption therein. J.B. lived with the paternal grandmother prior to the filing of the petition and, according to the DHHR, the permanency plan is either adoption or guardianship by the grandmother.

[3]Rule 26(a) provides that "[a]ny stipulated or uncontested adjudication shall include the following information: (1) Agreed upon facts supporting court involvement regarding the respondent's problems, conduct, or condition; and (2) A statement of respondent's problems or deficiencies to be addressed at the final disposition."

terminating his parental rights when less-restrictive alternatives were available. We find no merit in any of petitioner's arguments.

To begin, the circuit court did not fail to provide petitioner with a statement of problems and deficiencies to be addressed at the final dispositional hearing pursuant to Rule 26(a). The record reflects that petitioner discussed the terms and conditions of a post-adjudicatory improvement period, were he to be granted one, at an MDT meeting held in October of 2017. Thereafter, the circuit court entered its adjudicatory order in January of 2018, wherein it accepted petitioner's stipulation that he left the children in a filthy, hungry, and improperly clothed condition and spent his limited resources on obtaining Suboxone. The circuit court adjudicated petitioner based upon that stipulation and granted him a post-adjudicatory improvement period. In its order, the circuit court instructed the DHHR to "give any and all services they can to [petitioner]" and ordered petitioner to participate in services, communicate with the DHHR, submit to drug screens, and participate in supervised visitation with the children. At some point, the circuit court became aware that no specific terms and conditions were reduced to writing and ordered that the DHHR do so. On February 1, 2018, the circuit court entered an order containing seven enumerated terms and conditions of petitioner's improvement period which was signed and approved by his counsel.

As such, the record is clear that petitioner admitted to certain allegations against him and was informed that he needed to correct the conditions of abuse and neglect by actively complying with the terms and conditions of his improvement period. In fact, the dispositional hearing transcript reveals the following exchange:

| | |
|---|---|
| The Court: | In fact, [the DHHR] moved to terminate his Post-Adjudicatory Improvement Period one time. |
| [The Prosecutor]: | Yes, Your Honor. |
| The Court: | And I denied it. You know why I denied it? |
| [The Prosecutor]: | Because I did not have his signature on – |
| The Court: | It wasn't reduced to writing at all. You later – remember that, [petitioner]? |
| [Petitioner]: | Yes. |
| . . . . | |
| The Court: | And I said "what improve [sic] period?" Remember that? |
| [Petitioner]: | Yes, sir. |
| The Court: | And I denied that, and I granted you another opportunity. |

4

| [Petitioner]: | Yes, sir. |
| --- | --- |
| The Court: | A second one. You knew what the terms were, but they didn't put them in writing. |
| [Petitioner]: | Yes, sir. |
| The Court: | So I made them put them in writing, and they did. |
| [Petitioner]: | Yes. |

Petitioner admitted that he knew what parenting deficiencies he needed to correct by disposition and failed to follow through with any aspect of his post-adjudicatory improvement period. Therefore, we find that the circuit court did not err in failing to provide petitioner with a statement of problems or deficiencies that he needed to correct by disposition and further find that petitioner is entitled to no relief in this regard.

As to petitioner's arguments that the termination of his parental rights based solely on his stipulation to an isolated incident was insufficient evidence upon which to adjudicate him and that the circuit court erred in considering evidence of his failure to comply with services that were not relevant to his stipulation at disposition, we disagree.[4]

---

[4]To the extent that petitioner argues that the circuit court improperly adjudicated him based upon his stipulation because it was insufficient to adjudicate him as an abusing parent pursuant to West Virginia Code § 49-4-601(i), we note that a review of the record indicates that petitioner did not object to the circuit court's order finding that he was an abusing parent nor did he otherwise seek to dismiss the petition for failure to adequately allege abuse and/or neglect. As such, petitioner has waived his right to raise this issue on appeal. *See State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal."). Accordingly, the Court finds that petitioner is entitled to no relief in this regard.

Moreover, to the extent that petitioner argues the circuit court improperly considered evidence of his noncompliance with certain services not relevant to his stipulation, we find that this alleged error does not warrant reversal of the dispositional order under the limited circumstances of this case. Petitioner stipulated that he used his limited resources to obtain Suboxone rather than provide for his children. The MDT members agreed to services based upon petitioner's stipulation, including submitting to drug screens. Petitioner's failure to submit to drug screens prevented him from visiting the children and, at the time of the dispositional hearing, he had not seen them since they were removed from his care in July of 2017. Additionally, petitioner was arrested for possession of methamphetamine during the proceedings and remained incarcerated at the time of the dispositional hearing. Accordingly, it is clear that, regardless of whether petitioner was adjudicated upon his substance abuse or other issues he deems not directly relevant to his stipulation, the effects of these issues were relevant to his inability to complete services designed to correct the conditions of abuse and neglect upon which

(continued . . .)

5

Contrary to petitioner's argument that mere failure to comply with an improvement period is not sufficient to terminate parental rights, we have previously held,

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Further, pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Following petitioner's improvement period, the circuit court was required to review petitioner's performance in attempting to attain the goals of the improvement period and determine whether he made sufficient improvement to justify the return of the children. Here, petitioner failed to comply with the terms and conditions of his improvement period and, as such, there was no evidence to demonstrate that he actually corrected the conditions of abuse and neglect. He did not submit to a single drug screen, failed to attend any parenting or adult life skills classes, and failed to participate in supervised visitation with the children for the entirety of the proceedings. Indeed, petitioner concedes as much in his brief. Failure to follow through with services designed to reduce or prevent the abuse and neglect of the children supports a finding that there is no reasonable likelihood that a parent can correct the conditions of abuse and neglect in the near future. Therefore, based upon petitioner's complete lack of compliance with any of the services offered through his improvement period, we find that the circuit court correctly terminated his parental rights upon proper findings that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare.

---

he was adjudicated. Further, petitioner agreed to the terms of his improvement period and did not object. Therefore, we find no error. *See Jessie*, 225 W.Va. at 27, 689 S.E.2d at 27.

While petitioner argues that less-restrictive alternatives to termination of his parental rights were available, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 24, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

7