**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.H., N.H., and T.H.**

**No. 19-0912** (Harrison County 18-JA-105-2, 18-JA-106-2, and 18-JA-107-2)

**MEMORANDUM DECISION**

Petitioner Father F.S., by counsel Johnna L. Shumate, appeals the Circuit Court of Harrison County's September 16, 2019, order terminating his parental rights to A.H., N.H., and T.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when the DHHR failed to prove that he abused and/or neglected his children. Petitioner also argues that the circuit court erred in terminating his parental rights upon a finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and without considering a less-restrictive disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against petitioner alleging that he engaged in domestic violence and drug abuse in the children's presence and had an extensive criminal history. Specifically, the DHHR alleged that petitioner and the mother had an argument in the children's presence in July of 2018, wherein both A.H.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

and N.H. were struck or hit while the parents were fighting. The DHHR also noted that petitioner's criminal history included convictions for burglary, wanton endangerment with a firearm, grand larceny, delivery of a controlled substance, conspiracy to deliver a controlled substance, driving under the influence, possession of a controlled substance, possession with intent to distribute, and petit larceny. According to the DHHR, petitioner was serving five years of probation and had recently served a sixty-day sanction in jail for probation violations.[2] Regarding petitioner's drug abuse, the DHHR alleged that probation officers visited the home in July of 2018 and smelled marijuana emanating from inside. Petitioner produced a bag of methamphetamine and a glass pipe for the probation officers, and the officers discovered other drug paraphernalia during a search of the home. Petitioner admitted to abusing drugs, including methamphetamine, while the children were in his care. In September of 2018, probation officers made a second visit to petitioner's home. The mother told the officers that petitioner was working. However, upon searching the home, the probation officers discovered petitioner hiding under a blanket. Petitioner was drug screened and tested positive for methamphetamine, amphetamines, and alcohol.[3] Based on the foregoing, the DHHR concluded that the children were abused and/or neglected.

The circuit court held an adjudicatory hearing in October of 2018. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated him as a neglecting parent. Petitioner moved the circuit court for a post-adjudicatory improvement period, and the circuit court granted the same. As part of the terms and conditions of the improvement period, petitioner was required to refrain from abusing drugs, complete a psychological evaluation and a drug and alcohol assessment, submit to random drug screening, participate in parenting and adult life skills classes, participate in supervised visitation with the children, and obtain and maintain suitable housing and employment. Thereafter, petitioner minimally complied with services and was incarcerated on May 20, 2019, upon violating the terms and conditions of his probation.

In August of 2019, the circuit court held a dispositional hearing. The DHHR presented evidence that petitioner submitted to only two drug screens: one in November of 2018 and one in December of 2018. At the December of 2018 screening, petitioner tested positive for amphetamines and methamphetamine. A service provider testified that although supervised visitation services were initiated on February 3, 2019, petitioner did not participate in a visit until March 7, 2019, and stayed for only forty-five minutes of the two-hour visit. Of the forty-nine scheduled visits, the provider testified that petitioner attended only three other supervised visits with the children. Petitioner ceased participating in visits after April 3, 2019. A second service provider testified that petitioner began parenting and adult life skills classes in November of 2018. According to the service provider, petitioner attended four classes but then stopped

---

[2]The charge for which petitioner received probation is unknown; however, petitioner admitted during the later-held dispositional hearing that it was drug-related.

[3]Petitioner was arrested and subsequently released around November of 2018.

participating after December 26, 2018. The DHHR also presented the testimony of a Child Protective Services ("CPS") worker, who testified that petitioner failed to maintain contact with her throughout the case. The CPS worker opined that petitioner had not successfully completed his improvement period.

Petitioner testified that, despite not completing the course, he passed the test for his parenting class. Petitioner also testified that, since his incarceration in May of 2019, he completed one stress management class and two parenting classes provided by the jail. Petitioner stated that he was currently participating in a drug rehabilitation class and passed a high school equivalency test. Petitioner conceded that he was originally on probation due to drug-related charges and that his probation had been revoked due to drug use.

Based on the evidence presented, the circuit court found that petitioner failed to complete or substantially comply with his improvement period. The circuit court specifically found that petitioner demonstrated an inability to remedy the issues of neglect, had not had contact with the children for a significant period of time, and that his recent criminal sentences kept him from addressing the conditions of neglect. The circuit court terminated petitioner's parental rights to the children based upon finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Petitioner appeals the circuit court's September 16, 2019, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

---

[4]Regarding the mother, the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(b)(5) (2019), which provides that a circuit court may "commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court" upon a finding that "the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs." The permanency plan for the children is guardianship by their grandmother.

3

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner sets forth three assignments of error regarding the termination of his parental rights. Petitioner first contends that the circuit court erred in terminating his parental rights when the DHHR failed to prove by clear and convincing evidence that he abused and/or neglected his children such that termination was warranted. Petitioner also argues that the circuit court erred in terminating his parental rights upon an erroneous finding that there was no reasonable likelihood that he could correct the conditions of neglect in the near future. According to petitioner, he presented evidence that he was participating in several classes while incarcerated. Further, petitioner claims that, prior to his incarceration, he was an active participant in his parenting and adult life skills classes and passed his parenting class examination. Petitioner contends that these actions demonstrate that there was a reasonable likelihood that he could correct the conditions of neglect. Lastly, petitioner argues that the circuit court should have imposed a less-restrictive alternative than the termination of his parental rights. In support of his argument, petitioner claims that his incarceration should not bar him from being granted a less-restrictive disposition. Petitioner further points out that the circuit court imposed a less-restrictive disposition pursuant to West Virginia Code § 49-4-604(b)(5) (2019)[5] on the mother and that the children were placed with their grandmother. Therefore, petitioner contends that the children were in a safe place and that imposing a less-restrictive alternative to the termination of his parental rights would have allowed him to address the conditions of neglect and ultimately regain custody of his children. We disagree.

First, to the extent that petitioner argues that the termination of his parental rights was improper because the DHHR failed to prove that he abused and/or neglected the children, we note that petitioner knowingly, intelligently, and voluntarily stipulated to the allegations contained in the petition. A review of the record indicates that petitioner acknowledged that he understood the implications of stipulating to neglecting his children, including that his parental rights could be terminated. Further, petitioner did not object to the circuit court's order finding that he was a neglecting parent, nor did he otherwise seek to dismiss the petition for failure to adequately allege abuse and/or neglect. As such, petitioner has waived his right to raise this issue on appeal. *See State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered for the first time on appeal."). Accordingly, the Court finds that petitioner is entitled to no relief in this regard.

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Next, we find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent

> ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. The record indicates that petitioner failed to comply with every aspect of his post-adjudicatory improvement period. Petitioner submitted to only two drug screens and tested positive for methamphetamine at one of those screens. Further, petitioner failed to adequately comply with parenting and adult life skills classes. While petitioner claims he studied the materials at home and passed the parenting examination, he did not complete the coursework and the service was eventually closed due to his noncompliance. Petitioner also failed to participate in supervised visitation with the children. Petitioner waited over a month after this service was initiated to participate in his first visit and stayed for only forty-five minutes of the two-hour visit. Of the forty-nine scheduled visits, petitioner attended only four. Additionally, despite the fact that petitioner was not incarcerated until May 20, 2019, he failed to attend a single visit after April 3, 2019.[6] "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996)(citing *Tiffany Marie S.*, 196 W. Va. 223, 228 and 237, 470 S.E.2d 177, 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)).

While petitioner contends that he demonstrated he was likely to correct the conditions of neglect in the near future because he participated in services while incarcerated, petitioner fails to explain his failure to participate in his improvement period prior to his incarceration and

---

[6]As part of his argument, petitioner cites to several cases discussing the consideration of incarceration at disposition. However, petitioner fails to explicitly state what his argument is with regard to his incarceration. To the extent petitioner implies that the circuit court erred in terminating his parental rights based solely on his incarceration, we find no error as the record is clear that the circuit court considered other facts and circumstances in making its decision, as discussed more fully above.

further fails to cite to any portion of the record wherein the circuit court found that the services offered by the jail were sufficient to satisfy the terms of the improvement period. Based on petitioner's inadequate participation in drug screens, parenting and adult life skills classes, and supervised visits with the children, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. Additionally, the circuit court correctly found that termination was necessary for the children's welfare based on petitioner's failure to maintain contact with them and their need for permanency.

Although petitioner argues that a less-restrictive disposition than the termination of his parental rights should have been imposed because a less-restrictive disposition was imposed on the mother, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court's findings are fully supported by the record below, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison